**FEDERAL–MOGUL CORPORATION,**
**Plaintiff,**

**The Torrington Company,**
**Plaintiff–Intervenor,**

v.

**UNITED STATES, Defendant, SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Limited and SKF Sverige, AB; FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Limited, Barden Corporation (UK) Limited, FAG Bearings Corporation, The Barden Corporation and Barden Precision Bearings Corporation; RHP Bearings and RHP Bearings Inc.; Peer Bearing Company; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation; SNR Roulements; NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Corporation and NTN Kugellagerfabrik (Deutschland) GmbH, Defendant–Intervenors.**

Slip Op. 96–68.
Court No. 92–06–00422.

United States Court of International Trade.

April 19, 1996.

212

Frederick L. Ikenson, P.C., Washington, DC (Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel) for plaintiff, Federal–Mogul Corporation.

Stewart and Stewart, Washington, DC (Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine and Robert A. Weaver) for plaintiff-intervenor The Torrington Company.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis, Assistant Director, Marc E. Montalbine); of counsel: Stephen J. Claeys, Craig R. Giesze, Dean A. Pinkert, Thomas H. Fine, Alicia Greenidge and David J. Ross, Attorney–Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Howrey & Simon, Washington, DC (Herbert C. Shelley, Alice A. Kipel, Juliana M. Cofrancesco and Thomas J. Trendl) for defendant-intervenors SKF USA, Inc., SKF France, S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.), Limited, and SKF Sverige, AB.

Grunfeld, Desiderio, Lebowitz & Silverman, New York City (Max F. Schutzman, Andrew B. Schroth, David L. Simon and Matthew L. Pascocello) for defendant-intervenors FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Limited, Barden Corporation (UK) Limited, FAG Bearings Corporation, The Barden Corporation and Barden Precision Bearings Corporation.

Covington & Burling, Washington, DC (Harvey M. Applebaum, David R. Grace and Thomas A. Robertson) for defendant-intervenors RHP Bearings and RHP Bearings Inc.

Venable, Baetjer, Howard & Civiletti, Washington, DC (John M. Gurley and Lindsay B. Meyer) for defendant-intervenor Peer Bearing Company.

Powell, Goldstein, Frazer & Murphy, Washington, DC (Peter O. Suchman, Neil R. Ellis, T. George Davis, Niall P. Meagher and Susan M. Mathews) for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.

Lipstein, Jaffe & Lawson, Washington, DC (Robert A. Lipstein, Matthew P. Jaffe and Grace W. Lawson) for defendant-intervenors NSK Ltd. and NSK Corporation.

Grunfeld, Desiderio, Lebowitz & Silverman, Washington, DC (Bruce M. Mitchell, David L. Simon, Philip S. Gallas, Jeffrey S. Grimson, Andrew B. Schroth and Matthew L. Pascocello) for defendant-intervenor SNR Roulements.

Barnes, Richardson & Colburn, Chicago, IL (Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald) for defendant-intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Corporation and NTN Kugellagerfabrik (Deutschland) GmbH.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Federal–Mogul Corporation ("Federal–Mogul"), challenges certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of redetermination on remand filed pursuant to *Federal–Mogul Corp. v. United States*, 18 CIT ——, 862 F.Supp. 384 (1994) concerning *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed. Reg. 28,360 (1992), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 57 Fed. Reg. 32,969, (1992); *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Sweden, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 57 Fed. Reg. 59,080 (1992).

### Background

In *Federal–Mogul Corp. v. United States*, 18 CIT ——, 862 F.Supp. at 412–13, the Court remanded this case to Commerce to: (1) examine the administrative record to determine the exact monetary amount of value added tax ("VAT") paid on each sale in the home market ("HM") and to assure that the amount added to the comparable United States price ("USP") sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) (1988) is less than or equal to this amount; (2) add the full amount of VAT paid in the home market to foreign market value ("FMV") without adjustment; (3) treat currency hedging expenses as indirect selling expenses pursuant to 19 C.F.R. § 353.56(b)(2) (1992); (4) reinstate the "all other" cash deposit rate applicable prior to these final results for entries which have not become subject to assessment pursuant to a subsequent administrative review; (5) remove unaccounted for home market commission expenses from sales price before making the sales price to cost of production ("COP")

comparison in the calculation of FMV for SKF GmbH ("SKF–Germany"); (6) correct the clerical error relating to percentage of the value reported as "COMI" with respect to Fag Cuscinetti SpA's ("FAG–Italy") financial expenses and to adjust FMV for FAG–Italy if this correction indicates that such an adjustment is appropriate; (7) add an amount for profit no less than eight percent to the COP data which was submitted in lieu of related-party transfer prices for FAG–Italy with respect to calculation of constructed value ("CV"); (8) determine whether FAG–Italy's technical services and warranty expenses meet the standard required for those expenses to be treated as direct expenses and subtracted from FMV; (9) develop a methodology which removes technical services and warranty expenses incurred on sales of out-of-scope merchandise from any adjustments made to FMV for FAG–Italy's technical services and warranty expenses. The Court instructed Commerce that if no viable method could be developed, Commerce was to deny such adjustment in its calculation of FMV. Commerce was also to: (10) determine whether SKF–Industrie, S.p.A.'s ("SKF–Italy") U.S. bonded warehouse functioned as a warehouse or as a transport facility and to adjust USP if it found that the warehouse expense was incurred incident to bringing SKF–Italy's merchandise to the place of delivery in the United States; and (11) explain how it concluded that SKF–Italy had sufficient imports of raw materials to warrant a duty drawback adjustment to USP or, if unable to do so, to recalculate USP for SKF–Italy without an adjustment for duty drawback.

This remand affects twenty-six of the reviewed companies from six countries with respect to antidumping orders on ball bearings.

In *Federal–Mogul Corp. v. United States*, 18 CIT ——, ——, 872 F.Supp. 1011, 1017–18 (1994), the Court again remanded this case for various ministerial errors so that Commerce could: (1) deduct direct warranty expenses in calculating USP for SNR Roulements ("SNR"); (2) deduct U.S. repacking costs in calculating USP for INA Walzlager Schaeffler KG ("INA"); (3) determine wheth-

er Commerce miscalculated adjusted price for SKF–Germany; (4) determine whether it miscalculated FMV for Showa Pillow Block Manufacturing Co., Ltd. ("Showa Pillow Block"); (5) determine whether it miscalculated constructed value for Inoue Jikuuke Kogyo Co., Ltd. ("IJK"); (6) determine whether it miscalculated exporter's sales price ("ESP") for Izumoto Seiko Co., Ltd. ("Seiko"); (7) determine whether it miscalculated adjusted price for Nachi–Fujikoshi Corp. ("Nachi"); and (8) determine whether it miscalculated FMV for FAG (UK) Ltd. ("Fag–UK").

This remand affects eight of the reviewed companies from four countries with respect to the antidumping orders on ball bearings.

On February 27, 1995, Commerce submitted its redetermined final results entitled *Federal–Mogul Corp. v. United States, Slip Op. 94–136 (August 26, 1994), Slip Op. 94–198 (December 20, 1994), Final Results of Redetermination Pursuant to Court Remand ("Remand Results")*.

### Discussion

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

1. *Value Added Tax Calculation and Adjustment*

In this review, "[b]ecause all HM [home market] sales were reported net of VAT, [Commerce] added the same VAT amount to FMV as that calculated for USP." *Final Results*, 57 Fed.Reg. at 28,419. Commerce explained, "This is equivalent to calculating the actual HM tax and then performing a COS [circumstance of sale] adjustment to FMV to eliminate the absolute difference between the amount of tax in each market."

*Id.* Commerce "calculated the addition to USP by applying the HM tax rate to the net USP after all other adjustments were made." *Id.* at 28,420. Commerce "applied the foreign market tax rate to a USP calculated at an appropriate point in the chain of commerce." *Federal–Mogul*, 18 CIT at ——, 862 F.Supp. at 392. In remanding the Final Results, the Court directed Commerce to determine the exact monetary amount of VAT paid on each home market sale and ensure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to that amount and to add the full amount of VAT paid in the home market to FMV without a COS adjustment. *Federal–Mogul*, 18 CIT at ——, 862 F.Supp. at 412. The Court instructed Commerce to use the amount of VAT paid on each home market sale, as evidenced by respondents' VAT records, as a "cap" on the amount of the adjustment made to the comparable USP sale. *Id.* at ——, 862 F.Supp. at 395.

Commerce "complied with the instructions of the Court" which directed it not to make a COS adjustment. *Remand Results* at 28. To comply, Commerce has changed its VAT methodology and

> added to USP the result of multiplying the foreign market tax rate by the price of the United States merchandise at the same point in the chain of commerce that the foreign market tax was applied to foreign market sales. [Commerce] has also adjusted the USP tax adjustment and the amount of tax included in FMV. These adjustments deduct the portions of the foreign market tax and the USP tax adjustment that are the result of expenses that are included in the foreign market price used to calculate foreign market tax and are included in the United States merchandise price used to calculate the USP tax adjustment and that are later deducted to calculate FMV and USP. These adjustments to the amount of the foreign market tax and the USP tax adjustment are necessary to prevent our new methodology for calculating the USP tax adjustment from creating antidumping duty margins where

no margins would exist if no taxes were levied upon foreign market sales.

*Remand Results* at 5.

According to Commerce, the "current methodology does not base adjustments on differing tax bases, and thus does not require 'capping.'" *Remand Results* at 19. Commerce also submits that its new methodology "has the same effect as a cap." *Id.* at 22. Commerce explains further:

> The tax added to USP, adjusted for the amount attributable to expenses, will be less than that added to FMV whenever the final USP is less than or equal to the final FMV, *i.e.* whenever the U.S. sale is dumped. Further, whenever the U.S. tax base exceeds the home market tax base, there would be no dumping margin regardless of whether the amount of tax added to USP is equal to or exceeds the amount included in FMV.

*Id.*

Federal–Mogul challenges Commerce's failure to cap the amount of the tax adjustment to USP as required by the Court. Federal–Mogul contends that under Commerce's new methodology, the additur to USP may exceed the amount of the home market tax included in FMV where the U.S. tax base exceeds the home market tax base. Pl.'s Comments on Remand Results at 4. Federal–Mogul argues that capping is imperative because capping affects "the total USP, which is the denominator used to calculate a respondent's weighted-average margin." *Id.* at 7. Federal–Mogul is concerned because there is not yet any indication of how the Remand Results will be implemented for purposes of assessment and because weighted-average margins are important with respect to eligibility for partial revocation of dumping orders. *Id.*

Although Commerce maintains that it has not had an opportunity to address Federal–Mogul's argument in the context of its new tax methodology, it argues that its longstanding position is that 19 U.S.C. § 1677a(d)(1)(C) merely prohibits a tax ad-

justment to USP where taxes in the home market were not actually paid to the government. *Remand Results* at 19–21. Commerce relies on *Daewoo Elecs. Co. v. International Union of Elec., Elec., Technical, Salaried and Mach. Workers, AFL–CIO* ("*Daewoo*"), 6 F.3d 1511, 1516–17 (Fed.Cir. 1993), *cert. denied sub nom., International Union of Elec., Elec., Technical, Salaried and Mach. Workers, AFL–CIO v. United States,* —— U.S. ——, 114 S.Ct. 2672, 129 L.Ed.2d 808 (1994), for support,[1] inferring from *Daewoo* that the statute does not require that the amount of the tax adjustment to USP be capped. *Id.* According to Commerce, the language "to the extent" in § 1677a(d)(1)(C) imposes a limitation only on *when* the U.S. adjustment can be made, not on the *amount* of that adjustment. *Id.* at 20. With respect to cash deposit rates, Commerce maintains that "to impose a cap on the deposit rate would, in effect, conflict with the requirement of this court that the U.S. tax adjustment be calculated by multiplying the U.S. tax base by the home market tax rate." *Id.* at 22. According to Commerce, "[a] capped U.S. tax adjustment is equivalent to applying a tax rate to USP lower than that applied in the home market." *Id.*

Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo") inform the Court that only this issue in the Remand Results has impacted on Koyo's margins. According to Koyo, a cap to the VAT adjustment to USP is unnecessary. Koyo argues, however, that even if capping is proper, a remand regarding Koyo is unnecessary because capping would have only a *de minimis* effect on Koyo's dumping margin and the cash deposit rate applicable to Koyo has been superseded. Koyo requests that the Court affirm the Remand Results on this issue. Reply of Def.–Int. Koyo to Comments by Pl. on Remand Results at 3–6.

NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation ("NTN") seek entry of final judgment pursuant to CIT

---

1. The cited pages in *Daewoo* relate to the question of whether Commerce is required to under-   take a tax incidence analysis.

Rule 54(b).[2] According to NTN, "[t]here is no just reason for delay in the entry of a final judgment with respect to NTN" as only the VAT issue affects NTN and it "has since been mooted" by *Federal–Mogul,* 63 F.3d 1572, (Fed.Cir.1995) where Commerce's "pre-remand methodology in this case was affirmed." Def.–Int. NTN's Mot. for Entry of Final J at 1. NTN claims that, since all issues in which NTN had a stake have now been decided, "[i]t would be unfair to require NTN to await the conclusion of remand proceedings in which it has no stake." *Id.* at 2. NTN also points out that it was not included in the most recent results filed with this Court on March 1, 1996. *Id.*

Regarding the adjustment methodology for the Japanese consumption tax, NSK Ltd. and NSK Corporation ("NSK") point out that Commerce inadvertently reversed the applicable arithmetic sign in four lines of programming, adversely affecting NSK. According to NSK, the errors pertain to calculation of (1) home market net price; (2) purchase price price-to-price matches; (3) ESP price-to-price matches; and (4) ESP CV matches. NSK requests a further remand for correction of this error. Comments of Def.–Int. NSK on Remand Results at 1–4.

Commerce agrees that the errors identified by NSK should be remanded for correction. Def.'s Resp. to Comments on Remand Results at 17.

Adjustments to USP for consumption taxes forgiven on merchandise which is exported to the United States are governed by 19 U.S.C. § 1677a(d)(1)(C). In *Federal–Mogul*

*Corp. v. United States,* 17 CIT 88, 95, 813 F.Supp. 856, 862 (1993), *rev'd on other grounds,* 63 F.3d 1572 (Fed.Cir.1995), the Court held that

the plain meaning of the phrase, "but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation" simply means that [Commerce] is to adjust USP in an amount less than or equal to, but not greater than, the actual amount of tax paid on a sale of the subject merchandise in the home market as represented on the company's books or elsewhere in the administrative record.

Thus, the Court viewed the statutory phrase in question as addressing the issue of "capping" the actual monetary amount added to USP to adjust for the foreign VAT by the actual amount of tax paid in the home market.[3] *Id.* at 95, 813 F.Supp. at 862.

The court has since observed that, although earlier cases have imposed a cap related to Commerce's prior methodology of adjusting for absolute amount of the foreign market tax, more recently, "the court has required that the VAT adjustment be made via application of the home market tax rate to a tax base that is appropriately adjusted." [4]. *Zenith Elecs. Corp. v. United States,* 19 CIT ——, ——, Slip Op. 95–38 at 2–3, 1995 WL 116264 (Mar. 13, 1995). In *Zenith,* the court upheld a methodology identical to Commerce's current methodology, remarking that "Commerce's new methodology ... does not require the cap applicable to the prior methodology." *Id.* at ——, Slip Op. 95–38 at 3 (citing *Federal–Mogul,* 19 CIT at ——, 862 F.Supp. at 394–95). Thus, Commerce's

---

**2.** CIT Rule 54(b) allows the Court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of final judgment."

**3.** In *Zenith Elecs. Corp. v. United States,* 10 CIT 268, 633 F.Supp. 1382 (1986), *appeal dismissed,* 875 F.2d 291 (Fed.Cir.1989), Judge Watson, in the context of resolving a measurement of economic tax incidence question, observed that the "to the extent" language in the 1974 amendment was intended to impose a cap on the amount of taxes that could be added to USP. While the CAFC overruled Judge Watson's further interpre-

tation of the "to the extent" language as requiring a measurement of tax incidence, the CAFC did not invalidate Judge Watson's observations regarding capping. *See Daewoo,* 6 F.3d at 1511.

**4.** *See, e.g., Torrington Co. v. United States,* 18 CIT ——, ——, 866 F.Supp. 1434, 1437 (1994), *aff'd,* 68 F.3d 1347 (Fed.Cir.1995); *Federal–Mogul Corp. v. United States,* 17 CIT 1093, 1098–99, 834 F.Supp. 1391, 1396–97 (1993) (holding that Commerce is to apply the rate of forgiven VAT to USP, calculated at the same point in the stream of commerce as where the VAT is applied for home market sales, and to add the resulting amount to USP, without a COS adjustment to FMV), *rev'd,* 63 F.3d 1572 (Fed.Cir.1995).

"new" methodology has previously received judicial approval. *See also Zenith Elecs. Corp. v. United States,* 19 CIT ——, ——, Slip Op. 95–35 at 2, 1995 WL 106959 (Mar. 9, 1995); *Torrington Co. v. United States,* 18 CIT ——, ——, 853 F.Supp. 446, 448–49 (1994); *Independent Radionic Workers of Am. v. United States,* 18 CIT ——, ——, 862 F.Supp. 422, 426 (1994); *Zenith Elecs. Corp. v. United States,* 18 CIT ——, Slip Op. 94–146, 1994 WL 520922 (Sept. 19, 1994).

■ As noted, Commerce's current methodology calculates the additur to USP by applying the HM tax rate to the USP. *Remand Results* at 5. The methodology of applying the *rate* of VAT to the United States merchandise, and then adding to the USP the result of the calculation, creates a distortion in the dumping margin due to a mathematical peculiarity known as the "multiplier effect."[5] The United States Court of Appeals for the Federal Circuit ("CAFC") has recently upheld a methodology used previously by Commerce which sought to eliminate the multiplier effect by adding the actual *amount* of the VAT to the USP. *Federal–Mogul,* 63 F.3d at 1580.

In reaction to the CAFC's decision in *Federal–Mogul,* 63 F.3d at 1572, and subsequent to filing the Remand Results, Commerce informed the Court that it now wishes to return to the tax-neutral methodology approved by the Federal Circuit. Therefore, the Court remands the VAT issue to Commerce to apply the tax-neutral methodology approved by the CAFC in *Federal–Mogul,* 63 F.3d at 1572, for respondents for whom the aforementioned methodology has not been utilized and recalculate the dumping margins accordingly.[6] As this issue is being remanded, Commerce is also to correct the clerical computer programming errors identified by NSK relating to the Japanese consumption tax which resulted in reversal of the arithmetic sign when calculating home market net price, purchase price price-to-price matches, ESP price-to-price matches, and ESP CV matches for NSK.

In addition, the Court rejects NTN's motion for final judgment concerning NTN. Although under CIT Rule 54(b), the Court may direct the entry of an early final judgment in appropriate circumstances, the Court does so at its discretion, taking into consideration the Court's interest in "sound judicial administration" and the "preser[vation of] the historic federal policy against piecemeal appeals." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7–8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980) (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436–38, 76 S.Ct. 895, 900–01, 100 L.Ed. 1297 (1956)). *See also Timken Co. v. Regan,* 5 CIT 4, 1983 WL 4993 (1983). The Court believes that a final judgment with respect to all of the issues can be expected in the foreseeable future. Therefore, there is no unfairness in requiring NTN to await the conclusion of litigation and the entry of a final judgment with respect to all claims raised by this case. The Court's decision will allow all parties dissatisfied with the final judgment in this case to appeal that judgment at the same time with respect to all issues covered by the underlying decisions with which they are dissatisfied.

### 2. *Currency Hedging Expenses*

The Court remanded this issue to Commerce to treat hedging expenses as indirect selling expenses pursuant to 19 C.F.R. § 353.56(b)(2). *Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 412. Commerce has

---

5. The "multiplier effect" penalized foreign producers by inflating their existing dumping margins. *Federal–Mogul,* 17 CIT at 1096 & n. 1, 834 F.Supp. at 1394–95 & n. 1.

6. Since filing the Remand Results, the Court has granted motions submitted by SNR, SKF and Koyo, and remanded the VAT issue in this case for further proceedings in accordance with the CAFC's opinion in *Federal–Mogul,* 63 F.3d at 1572. *Federal–Mogul Corp. v. United States,* 19 CIT ——, 907 F.Supp. 432 (1995); *Federal–Mogul Corp. v. United States,* 19 CIT ——, Slip Op. 95–184, 1995 WL 697244 (Nov. 20, 1995); *Federal–Mogul Corp. v. United States,* 19 CIT ——, Slip Op. 95–186, 1995 WL 697251 (Nov. 20, 1995).

In addition, Commerce has informed the Court, and the Court agrees, that recalculations were unnecessary for (1) Nippon Pillow Block Sales, Co., Ltd. and Uchiyama Manufacturing Corporation because their margins were based on best information available, and (2) Meter, S.p.A. ("Meter") because all of Meter's U.S. sales were matched to constructed value only. *Remand Results* at 6–7.

now "reclassified the currency hedging adjustments claimed by FAG–Italy, FAG–Germany [FAG Kugelfischer Georg Schafer KGaA], and RHP [RHP Bearings and RHP Bearings Inc.] as indirect adjustments to USP." *Remand Results* at 7. As this aspect of the case is uncontested, the Court sustains Commerce's Remand Results which comply with the Court's instructions to treat currency hedging expenses as indirect selling expenses.

### 3. *"All Others" Rate*

The Court remanded this issue to Commerce to reinstate the "all others" cash deposit rate applicable prior to these final results for entries which have not become subject to assessment pursuant to a subsequent administrative review. *Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 412. Commerce states that it "will instruct" the United States Customs Service to comply with the Court's order. *Remand Results* at 8.

Federal–Mogul and defendant-intervenors, SKF USA Inc., SKF–Germany, SKF France, S.A., SKF–Italy, SKF Sverige AB and SKF (U.K.) Limited (collectively "SKF"), protest Commerce's failure to clarify which cash deposit rates from the less-than-fair-value ("LTFV") investigations have been reinstated. Pl.'s Resp. to Comments of Def.–Ints. on Remand Results at 2; Comments of Def.–Int. SKF on Remand Results at 3–5. Concerned specifically about the Swedish and Italian ball bearing "all others" rates, SKF requests that Commerce be required to specify the relevant rates or at least cite to the *Federal Register* notices which amend original LTFV rates. Comments of Def.–Int. SKF on Remand Results at 4–5.

■ These arguments are without merit. Commerce has complied with the Court's instructions. It is obvious that where a LTFV "all others" rate has been amended, that rate governs where Commerce is direct-ed to reinstate the original LTFV investigation "all others" rate. *See, e.g., UCF Am. Inc. v. United States,* 20 CIT ——, ——, 919 F.Supp. 435, 438–39 (Feb. 27, 1996) (holding that the original "all others" LTFV rate was a nullity where Commerce amended the rate, the revision was unchallenged and sustained by the Court and the Court's decision was affirmed by the CAFC). Original LTFV results and amendments are easily accessible from the *Federal Register.* Therefore, the Remand Results on this issue are sustained as submitted.

### 4. *SKF–Germany's Home Market Commission Expenses*

With respect to performing the comparison of sales price with COP for SKF–Germany, the Court remanded this case to Commerce to allow it "to remove unaccounted for home market commission expenses from sales price before making the sales price to cost of production comparison for SKF–Germany so that [Commerce] may fairly evaluate whether any home market sales fall within the purview of 19 U.S.C. § 1677b(b) in the calculation of FMV." *Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 401. On remand, Commerce removed SKF–Germany's home market commission expenses paid on home market sales from home market prices prior to making comparisons to COP. *Remand Results* at 8.

SKF argues alternatively that (1) Commerce was not required to take any action on remand as SKF's COP totals include commissions or, if the deduction was required, (2) Commerce performed the deduction perfectly but its erroneous statement in the Remand Results that the "COP totals do not include commissions" should be revised. Comments of Def.–Int. SKF on Remand Results at 5–6; [7] Remand Results at 8.

Commerce maintains that it interpreted the phrase "unaccounted for home market commissions" in the Court's decision as "a

---

7. SKF suggests that the following text be substituted for the alleged misstatement by Commerce: "Although the selling expense totals included in the COP totals reported by SKF include home market commission expenses, no adjustment to COP was necessary; removal of these commis-sion expenses would not result in a change in the selling expense factor relied upon by SKF in calculating the selling expense amounts reported in the COP calculations." Comments of Def.–Int. SKF on Remand Results at 6.

holding by this Court that home market commissions ... were not included in the COP to which home market sales were compared." Def.'s Resp. to Comments on Remand Results at 15.

■ Although Commerce's interpretation of the Court's ruling was incorrect in that the Court's remand instruction merely responded to Commerce's desire to investigate whether the COP comparison at issue included any home market sales containing commissions,[8] Commerce has now "independently determined that it cannot conclude that SKF–Germany's COP includes commissions."[9] Id.; Remand Results at 8.

Inasmuch as the Court ordered Commerce to remove deductions for "unaccounted" commissions and the administrative record does not indicate that the reported figure actually includes commissions,[10] this aspect of Commerce's determination is supported by substantial evidence and is otherwise in accordance with law.

### 5. Fag–Italy's Financial Expenses

The Court remanded this issue to Commerce with respect to FAG–Italy's financial expenses to correct the clerical error relating to percentage of the value reported as "COMI" and, if appropriate, to adjust FMV after making the correction. Federal–Mogul, 18 CIT at ——, 862 F.Supp. at 413.

Commerce corrected the mathematical clerical error in FAG–Italy's reported financial expenses as instructed by the Court. Because this correction affects FAG–Italy's reported costs of production, Commerce performed a new cost test and disregarded all sales made below the revised costs of production in its calculation of FMV. Remand Results at 8–9. Accordingly, the Court sustains Commerce's handling of FAG–Italy's financial expenses upon remand.

### 6. FAG–Italy's Related–Party Transfer Prices

In this review, FAG–Italy only reported COP data for inputs from its related suppliers. It did not report transfer prices or demonstrate that it had purchased the inputs at arm's-length prices. For purposes of calculating CV, the Court instructed Commerce to add to FAG–Italy's reported costs of inputs from related suppliers, an amount for profit representing not less than the eight percent statutory minimum and to make any adjustments to CV that may be required as a result. Federal–Mogul, 18 CIT at ——, 862 F.Supp. at 403–04.

Commerce concluded that the Court's instructions required it "to add profit to constructed value twice: once on each input purchased from a related party, and again on the total of all inputs." Remand Results at 9. Because an arms-length market does not exist for the subject related-party inputs, Commerce was unable to determine an actual profit amount. Therefore, it determined profit at eight percent pursuant to 19 U.S.C. § 1677b(e)(1)(B)(ii) (1988). Id. at 9. In addition, "for purposes of this determination, [Commerce] added an eight percent profit margin to all of FAG–Italy's reported costs of materials" because Fag–Italy was unable to provide it with a methodology for identifying which products contain related-party inputs and which do not. Id. at 9–10.

As this aspect of Commerce's Remand Results are not contested and Commerce has complied with the Court's remand instructions with respect to profit, the Court sustains Commerce's treatment of FAG–Italy's reported costs of inputs from related suppliers for purposes of calculating constructed value.

### 7. Fag–Italy's Technical Services and Warranty Expenses

The Court remanded this issue to Commerce to determine whether FAG–Italy's al-

---

**8.** Federal–Mogul, 18 CIT at ——, 862 F.Supp. at 401.

**9.** In addition, SKF essentially admits that the inclusion or exclusion of home market commissions from SKF's COP does not alter the expense factor and, therefore, has no effect on the calcu-

lations. See Comments of Def.–Int. SKF on Remand Results at 5–6.

**10.** See SKF's Exhibit C, letter to Commerce dated October 27, 1994 at 7, n. 6 and documents cited therein.

location methodology for technical services and warranty expenses meets the standard set forth in *Smith–Corona Group Consumer Prod. Div., SCM Corp. v. United States,* 713 F.2d 1568, 1579–81 (Fed.Cir.1983), *cert denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), for those expenses to be treated as direct expenses and subtracted from FMV. *Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 406. Commerce was also instructed "to develop a methodology which removes technical services and warranty expenses incurred on sales of out-of-scope merchandise from any adjustments made to FMV for these expenses" and, if no viable method for removal could be developed, "to deny an adjustment for [these expenses] in its calculation of FMV for FAG–Italy." Id. at ——, 862 F.Supp. at 407.

■ Commerce fully complied with the Court's remand instructions. First, Commerce determined that FAG–Italy's technical services and warranty expenses were not granted or incurred as a fixed percentage of sales value and, therefore, do not meet the *Smith–Corona* standard to be treated as direct expenses. *Remand Results* at 10–11. Second, Commerce found that FAG–Italy's methodology for reporting these expenses included expenses incurred on non-scope merchandise. The administrative record did *not contain information which would permit* removal of those portions of the subject expenses related to non-scope merchandise from the adjustments to FMV. *Id.* at 11–12. Further, a methodology proposed by respondent was "essentially the same methodology" used in FAG–Italy's questionnaire response and "produce[d] the same technical services and warranties expense factor" FAG–Italy reported, and did not separate expenses incurred on scope- and non-scope merchandise. *Id.* at 12. Therefore, Commerce denied FAG–Italy adjustments to FMV for technical services and warranties expenses. *Id.*

Accordingly, Commerce's treatment of FAG–Italy's technical services and warranties expenses is sustained.

### 8. *SKF–Italy's Warehouse Expenses*

Concerning certain purchase price ("PP") transactions made by SKF–Italy to one of its U.S. customers, the Court directed Commerce to determine whether one of SKF–Italy's U.S. bonded warehouse facilities located in a foreign trade zone ("FTZ") functioned as a warehouse or a transport facility. In particular, the Court believed it important to ascertain why, and for what length of time, the subject merchandise resided in the warehouse. *Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 409.

■ On remand, Commerce examined the record and reached the following conclusions. The warehouse in question serves as more than just a transport facility. SKF–Italy's PP sales are stored in the FTZ facility until sold to the U.S. customer, thus actual storage costs are incurred on behalf of this customer. Inventory carrying costs information for these transactions allowed Commerce to estimate that the average storage time for the PP sales is considerably more than a month—a period comparable to SKF–Italy's U.S. warehouse storage time for ESP transactions. *Remand Results* at 13.

As the record corroborates that the facility in question functions as a warehouse and the warehouse cost related to the facility is not specifically incurred for the purpose of moving the subject merchandise to the place of delivery in the United States, Commerce was correct in initially not deducting the cost as a movement expense. Therefore, Commerce's determination is sustained on this issue.

### 9. *SKF–Italy's Duty Drawback Adjustment*

■ The Court instructed Commerce to apply the two-prong test to determine SKF–Italy's entitlement to a duty drawback adjustment under 19 U.S.C. § 1677a(d)(1)(B). This test requires that (1) the import duty and rebate be directly linked to, and dependent upon, one another; and that (2) the party claiming an adjustment demonstrate sufficient imports of the raw material to account for the duty drawback received on the exports of the subject merchandise. *See Final Determination of Sales at Less Than Fair Value: Certain Welded Stainless Steel Pipes From Taiwan,* 57 Fed.Reg. 53,705, 53,709–10 (1992). While the Court was satisfied that SKF–Italy met the first prong of

this test, the Court directed Commerce to explain how it concluded that the second prong had been met. If unable to do so, Commerce was instructed to deny the adjustment. *Federal–Mogul,* 19 CIT at ——, 862 F.Supp. at 410.

■ Commerce has examined SKF–Italy's Section D response and has informed the Court that the firm purchased sufficient imported steel from its related supplier to account for the quantity of finished bearings shipped to the United States. *Remand Results* at 14. As Commerce has clarified that SKF–Italy documented sufficient imports of raw materials to account for the duty drawback claimed, Commerce's determination is affirmed on this issue.

### 10. *SNR's Direct Warranty Expenses on U.S. Sales*

With respect to SNR, Commerce's Final Results inadvertently omitted SNR's direct warranty expenses from the calculation of total U.S. direct selling expenses and, consequently, from total U.S. selling expenses which are, in turn, subtracted from unit price in the USP calculation. *Federal–Mogul,* 18 CIT at ——, 872 F.Supp. at 1014. The Court remanded this case to Commerce for correction of this error. *Id.*

Commerce has now "included [SNR's] direct warranty expenses on U.S. sales in the calculation of total U.S. direct selling expenses. *Remand Results* at 15. Therefore, the Court sustains the Remand Results with respect to this issue.

### 11. *INA's U.S. Repacking Costs*

In the Final Results, Commerce made an error in calculating the ESP variant of USP for INA by inadvertently failing to deduct the costs of INA's additional packing performed in the United States. The Court remanded this case to Commerce for correction of this error. *Federal–Mogul,* 18 CIT at ——, 872 F.Supp. at 1015.

Commerce has now corrected this computer error and deducted these expenses for additional packing performed in the United States from ESP for INA. *Remand Results*

at 15. The Court, therefore, sustains this aspect of the Remand Results.

### 12. *SKF Germany's Adjusted Price*

The Court remanded this case to Commerce to determine whether it miscalculated SKF–Germany's adjusted price by failing to deduct domestic pre-sale freight and inland freight expenses. *Federal–Mogul,* 18 CIT at ——, 872 F.Supp. at 1015.

Commerce has now determined that it inadvertently failed to deduct these expenses from adjusted price for SKF–Germany before comparing adjusted price with COP when testing for sales made at prices below COP. Accordingly, Commerce made the appropriate deduction. *Remand Results* at 16. Therefore, the Court sustains Commerce's treatment of adjusted price for SKF–Germany.

### 13. *Calculation of Showa Pillow Block's Foreign Market Value*

In *Federal–Mogul,* 18 CIT at ——, 872 F.Supp. at 1016, the Court remanded this part of the action for Commerce to determine whether it inadvertently omitted U.S. export inspection fees in calculating FMV for Showa Pillow Block.

Upon remand, Commerce determined that it excluded these inspection fees from the calculation of U.S. direct expenses which are, in turn, added to the FMV. Commerce has now included U.S. export inspection fees in the calculation of total U.S. direct expenses. *Remand Results* at 16. Accordingly, the Court sustains Commerce's unopposed treatment of Showa Pillow Block's inspection fees.

### 14. *IJK's Constructed Value, Izumoto Seiko's Exporter's Sales Price, Nachi's Adjusted Price, and FAG–UK's Foreign Market Value*

In the interest of accuracy in final determinations, the Court instructed Commerce to determine whether it (1) erroneously deducted interest expense in the calculation of CV for IJK; (2) improperly calculated exporter's sales price for Seiko by failing to deduct all known cost and expense elements from unit price in calculating entered value for ESP

sales; (3) improperly handled rebates in calculating Nachi's adjusted home price for comparison with COP for purposes of testing for sales made at prices below COP; and (4) improperly calculated foreign market value for FAG UK by erroneously adding U.S. repacking costs instead of home market packing costs. If Commerce agreed that these errors are ministerial, Commerce was directed to make the appropriate corrections. *Federal–Mogul,* 18 CIT at ——, 872 F.Supp. at 1017.

With respect to IJK, Commerce has examined whether certain interest expenses were erroneously deducted in the calculation of CV and has determined that the amount of IJK's interest expenses that was reported as a component of its total general and administrative expenses was deducted. Commerce corrected this error by not subtracting this interest expense in the calculation of CV. *Remand Results* at 16–17.

As Commerce has corrected this inadvertent error related to IJK's interest expenses, the Court sustains the Remand Results on this issue.

Concerning Seiko, Commerce reports that for transactions where entered values were missing or zero for ESP, it originally calculated entered value by subtracting ocean freight and marine insurance from unit price. Upon remand and further consideration, Commerce determined that U.S. duty, customs and brokerage fees, and U.S. inland freight should also have been subtracted and has made this correction. *Remand Results* at 17.

As Commerce has now deducted all known cost and expense elements from unit price in calculating entered value for Seiko's ESP sales, the Court sustains this aspect of the Remand Results.

As to Nachi, Commerce examined whether it had improperly handled rebates in calculating adjusted home market price for comparison with COP for purposes of testing sales made at prices below COP. It "determined that (1) rebates to related parties were erroneously discarded before aggregating total rebates to be deducted in the calculation of adjusted price, and (2) rebates were errone-

ously set equal to zero in the calculation of the adjusted price where the rebates exceeded unit price." *Remand Results* at 17–18. Commerce has now corrected both of these errors. *Id.* at 18.

Therefore, the Court sustains the Remand Results with respect to Nachi's adjusted price.

Finally, Commerce examined whether it had incorrectly calculated FAG–UK's FMV for comparisons to ESP sales by adding U.S. repacking expenses and determined that U.S. repacking costs were improperly added. Commerce corrected the inadvertent error and "added home market packing expenses incurred in preparing the subject merchandise for shipment to the United States, instead of U.S. repacking expense, in the calculation of FMV for comparisons to ESP sales." *Id.*

As Commerce has now added home market packing expenses instead of U.S. repacking expenses in the calculation of FAG–UK's FMV for comparisons to ESP sales, the Court sustains this aspect of the Remand Results.

15. *Clerical or Ministerial Errors in the Remand Results.*

Federal–Mogul alleges that, in compiling the Remand Results, Commerce committed several ministerial, clerical, or otherwise inadvertent and indisputable errors in calculating USP and FMV for specific respondents. First, Federal–Mogul claims that Commerce erroneously included in USP for FAG–Germany and RHP, an amount for taxes in those instances in which USP was compared with FMV calculated on the basis of CV. Pl.'s Comments on Remand Results at 8–9.

In the Remand Results, Commerce agreed with Federal–Mogul that, in CV-based FMV situations, USP should be tax exclusive. The Remand Results purport to have recalculated USP in CV situations to exclude the VAT amount. *Remand Results* at 23.

Federal–Mogul claims that, in fact, Commerce failed to recalculate USP in CV situations. Pl.'s Comments on Remand Results at 9. Commerce concedes that Federal–Mogul's claim is correct and requests a

remand to rectify the error. Def.'s Resp. to Comments on Remand Results at 10–11. Therefore, this issue is remanded to Commerce with respect to FAG–Germany and RHP to allow Commerce to recalculate USP to exclude VAT in CV-based FMV situations.

■ Second, Federal–Mogul claims that the Statistical Analysis Software ("SAS") computer program used to generate the Remand Results for NTN is so seriously flawed that the results are meaningless. Specifically, Federal–Mogul alleges errors affecting the U.S. sales data set, the home market sales data set, the margin analysis for parts further manufactured in the United States, and the CV data set for ball bearing models. Pl.'s Comments on Remand Results at 9–13.

Commerce agrees that NTN's dumping margins should be recalculated and requests a remand. Def.'s Resp. to Comments on Remand Results at 11. Therefore, this case is remanded to allow Commerce to correct the errors pertaining to NTN which resulted from use of a flawed SAS computer program.

Finally, Federal–Mogul claims that in its comments to Commerce concerning the draft remand results, it pointed out that in calculating FMV for comparison to ESP for SKF (U.K.) Ltd. ("SKF–U.K."), Commerce's computer program failed to add home market taxes to FMV, resulting in a comparison of tax-*inclusive* USPs with tax-*exclusive* FMVs. Pl.'s Comments on Remand Results at 14.

The Remand Results recognize this error and state that the necessary corrections were made. Remand Results at 24.

■ Federal–Mogul acknowledges that the necessary corrections were made but argues that Commerce failed to list the correct recalculated weighted-average dumping margin for SKF–U.K. Pl.'s Comments on Remand Results at 14. Commerce agrees that the Remand Results should be corrected with respect to this error. Def.'s Resp. to Comments on Remand Results at 11. Therefore, this issue is remanded to Commerce to allow it to correctly list SKF–U.K.'s recalculated weighted-average dumping margin.

*Conclusion*

In accordance with the foregoing opinion, this case is remanded to Commerce to apply the tax-neutral methodology approved by the CAFC in *Federal–Mogul,* 63 F.3d at 1572, for respondents for whom the aforementioned methodology has not been utilized and recalculate the dumping margins accordingly. As this issue is being remanded, Commerce is also to correct the clerical computer programming errors identified by NSK relating to the Japanese consumption tax which resulted in reversal of the arithmetic sign in the calculation of home market net price, purchase price price-to-price matches, ESP price-to-price matches, and ESP CV matches for NSK. Further, Commerce is to correct the errors identified by Federal–Mogul. Specifically, Commerce is to recalculate USP to exclude the VAT amount in CV-based FMV situations for FAG–Germany and RHP. Commerce is also to correct the error pertaining to NTN which resulted from use of a flawed SAS computer program and affected the U.S. sales data set, the home market sales data set, the margin analysis for parts further manufactured in the United States, and the CV data set for ball bearing models. Finally, Commerce is to correctly list SKF–U.K.'s recalculated weighted-average dumping margin. Commerce's Remand Results are affirmed in all other respects.

The Remand Results are due within thirty (30) days of the date this opinion is entered. Any comments or responses by the parties to the Remand Results are due within fifteen (15) days thereafter.

**ORDER**

The Department of Commerce, International Trade Administration's ("Commerce"), having submitted its redetermination on remand filed pursuant to *Federal–Mogul Corp. v. United States,* 18 CIT ——, 862 F.Supp. 384 (1994), and *Federal–Mogul Corp. v. United States,* 18 CIT ——, 872 F.Supp. 1011 (1994) ("Remand Results"), it is hereby

**ORDERED** that this case is further remanded to Commerce to apply the tax-neutral value added tax ("VAT") methodology approved by the United States Court of Appeals for the Federal Circuit in *Federal–*

*Mogul v. United States,* 63 F.3d 1572 (Fed. Cir.1995), for respondents for whom the aforementioned methodology has not been utilized and recalculate the dumping margins accordingly; and it is further

**ORDERED** that Commerce is to correct the clerical computer programming errors identified by NSK Ltd. and NSK Corporation ("NSK") relating to the Japanese consumption tax which resulted in reversal of the arithmetic sign in the calculation of home market net price, purchase price price-to-price matches, exporter's sales price ("ESP") price-to-price matches, and ESP constructed value ("CV") matches for NSK; and it is further

**ORDERED** that Commerce is to recalculate USP to exclude the VAT amount in CV-based foreign market value situations for FAG Kugelfischer Georg Schafer KGaA and RHP Bearings and RHP Bearings Inc.; and it is further

**ORDERED** that Commerce is to correct the error pertaining to NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation which resulted from use of a flawed Statistical Analysis Software computer program and affected the U.S. sales data set, the home market sales data set, the margin analysis for parts further manufactured in the United States, and the CV data set for ball bearing models; and it is further

**ORDERED** that Commerce is to correctly list SKF (U.K.) Ltd.'s recalculated weighted-average dumping margin; and it is further

**ORDERED** that Commerce's Remand Results are affirmed in all other respects; and it is further

**ORDERED** that the Remand Results are due within thirty (30) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within fifteen (15) days thereafter.