FEDERAL–MOGUL CORPORATION,
Plaintiff,

The Torrington Company,
Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Limited and SKF Sverige, AB; Fag Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Limited, Barden Corporation (UK) Limited, FAG Bearings Corporation, The Barden Corporation and Barden Precision Bearings Corporation; RHP Bearings and RHP Bearings Inc.; Peer Bearing Company; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation; SNR Roulements; NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Corporation and NTN Kugellagerfabrik (Deutschland) GmbH, Defendant–Intervenors.

Slip Op. 94–198.
92–06–00422.

United States Court of
International Trade.

Dec. 20, 1994.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampe, Washington, DC, for plaintiff, Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine and Robert A. Weaver, Washington, DC, for plaintiff-intervenor The Torrington Co.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Marc E. Montalbine, of counsel: Stephen J. Claeys, Craig R. Giesze, Dean A. Pinkert, Thomas H. Fine and Alicia Greenidge, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon, Herbert C. Shelley, Alice A. Kipel, Juliana M. Cofrancesco and Thomas J. Trendl, Washington, DC, for defendant-intervenors SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Ltd. and SKF Sverige, AB.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, Andrew B. Schroth, David L. Simon and Matthew L. Pascocello, New York City, for defendant-intervenors FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Limited, Barden Corp. (UK) Ltd., FAG Bearings Corp., The Barden Corp. and Barden Precision Bearings Corp.

Covington & Burling, Harvey M. Applebaum, David R. Grace and Thomas A. Robertson, Washington, DC, for defendant-intervenors RHP Bearings and RHP Bearings Inc.

Venable, Baetjer, Howard & Civiletti, John M. Gurley and Lindsay B. Meyer, Washington, DC, for defendant-intervenor Peer Bearing Co.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis, T. George Davis and Niall P. Meagher, Washington, DC, for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Lipstein, Jaffe & Lawson, Robert A. Lipstein, Matthew P. Jaffe and Grace W. Lawson, Washington, DC, for defendant-intervenors NSK Ltd. and NSK Corp.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell, David L. Simon, Philip S. Gallas, Jeffrey S. Grimson, Andrew B. Schroth and Matthew L. Pascocello, New York City, for defendant-intervenor SNR Roulements.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for defendant-intervenors NTN Bearing Corp. of America, American NTN Bearing Mfg Corp., NTN Corp. and NTN Kugellagerfabrik (Deutschland) GmbH.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Federal–Mogul Corporation ("Federal–Mogul"), challenges the affirmative determination of the Department of Commerce, International Trade Administration ("Commerce"), in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed.Reg. 28,360 (1992).

This action comes before the Court on plaintiff's second motion for partial judgment upon the agency record pursuant to Rule 56.1 of the Rules of this Court.

### Background

On May 15, 1989, Commerce published antidumping duty orders covering the unfairly traded subject merchandise. *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany*, 54 Fed.Reg. 20,900 (1989); 54 Fed.Reg. 20,902 (1989) (France); 54 Fed.Reg. 20,903 (1989) (Italy); 54 Fed. Reg. 20,904 (1989) (Japan); 54 Fed.Reg. 20,906 (1989) (Romania); 54 Fed.Reg. 20,907 (1989) (Singapore and Sweden); 54 Fed.Reg. 20,909 (1989) (Thailand); *Antidumping Duty Orders and Amendments to the Final Determinations of Sales at Less Than Fair Value: Ball Bearings, and Cylindrical Roller Bearings and Parts Thereof From the United*

*Kingdom,* Fed.Reg. 20,910 (1989); 54 Fed. Reg. 20,911 (1989) (Thailand).

On June 28, July 19 and August 14, 1991, Commerce initiated administrative reviews of these orders with respect to various manufacturers and exporters for the period May 1, 1990 through April 30, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews,* 56 Fed. Reg. 29,618 (1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed.Reg. 33,251 (1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed.Reg. 40,305 (1991).

On March 31, 1992, Commerce published its preliminary determinations in these second administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 57 Fed. Reg. 10,859 (1992); 57 Fed.Reg. 10,862 (1992) (Federal Republic of Germany); 57 Fed.Reg. 10,865 (1992) (Italy); 57 Fed.Reg. 10,868 (1992) (Japan); 57 Fed.Reg. 10,875 (1992) (Sweden); 57 Fed.Reg. 10,878 (1992) (United Kingdom).

On June 24, 1992, Commerce published its consolidated Final Results. *Final Results,* 57 Fed.Reg. at 28,360. Amendments to the Final Results did not alter the results in any respect relevant to the issues discussed herein. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 32,969 (1992); *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Sweden, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 59,080 (1992).

Against this background, Federal–Mogul now moves pursuant to Rule 56.1 of the Rules of this Court for partial judgment upon the agency record alleging that Commerce made various ministerial errors in its Final Results.[1] Specifically, Federal–Mogul claims that Commerce: (1) failed to deduct direct warranty expenses in calculating United States price ("USP") for SNR Roulements ("SNR"); (2) failed to deduct U.S. repacking costs in calculating USP for INA Walzlager Schaeffler KG ("INA"); (3) improperly calculated adjusted price for comparison with cost of production ("COP") for SKF GmbH ("SKF–Germany"); (4) improperly calculated foreign market value ("FMV") for Showa Pillow Block Manufacturing Co., Ltd. ("Showa Pillow Block"); (5) improperly calculated constructed value for Inoue Jikuuke Kogyo Co., Ltd. ("IJK"); (6) improperly calculated exporter's sales prices for Izumoto Seiko Co., Ltd. ("Seiko"); (7) improperly calculated adjusted home market prices for comparison with COP for Nachi–Fujikoshi Corp. ("Nachi"); and (8) improperly calculated FMV for FAG (U.K.) Ltd. ("FAG U.K."). *Brief of Federal–Mogul Corporation in Support of its Second Motion for Partial Judgment Upon the Agency Record ("Plaintiff's Brief")* at 1–13.

Federal–Mogul alleges that due to the above-enumerated ministerial errors, Commerce's Final Results are unsupported by substantial evidence on the record and are not otherwise in accordance with law. *Plaintiff's Brief* at 3.

### Discussion

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

This Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v.*

---

1. The errors alleged pertain exclusively to ball    bearings.

*NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

*Ministerial Errors*

Federal–Mogul alleges that, due to various ministerial errors, various cash deposit rates established by the Final Results are understated.

*SNR's Direct Warranty Expenses on U.S. Sales*

Federal–Mogul first asserts that, although Commerce intended to calculate a specific percentage of the unit price to account for SNR's direct warranty expenses ("DWARRE") on U.S. sales and to deduct this amount from USP, Commerce failed to do so. Specifically, Federal–Mogul asserts that Commerce excluded DWARRE from total U.S. direct selling expenses ("USDRCT") and, consequently, also excluded DWARRE from total U.S. selling expenses ("USSELL") which were deducted from unit price in the USP calculation. Federal–Mogul seeks a remand so that Commerce may adjust its computer program to include DWARRE. *Plaintiff's Brief* at 6–7.

Commerce points out that it calculated the value for the variable DWARRE, but concedes that it inadvertently excluded DWARRE from USDRCT. Commerce concedes that, consequently, when deducting total USSELL from USP, it unintentionally neglected to also deduct direct warranty expenses. Commerce requests a remand to permit it to correct this error. *Defendant's Memorandum in Response to Plaintiff's Second Motion for Partial Judgment Upon the Agency Record ("Defendant's Brief")* at 5.

■ SNR objects to a remand on the ground that the error is harmless. Specifically, SNR argues that, unremedied, the error results in no discernible prejudice to Federal–Mogul, while its correction will increase Commerce's administrative costs. SNR also argues that the error results in an insignificant increase in the monetary amount of dumping duties owed and has no affect on the weighted-average dumping margin. *Non–Confidential Memorandum of Defendant–Intervenor SNR Roulements ("SNR") in Opposition to Plaintiff's Second Motion for Partial Judgment Upon the Agency Record* at 2–8.

■ The Court has stated that "fair and accurate determinations are fundamental to the proper administration of our dumping laws" and has recognized that "courts have uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination." *Koyo Seiko Co. v. United States,* 14 CIT 680, 682, 746 F.Supp. 1108, 1110 (1990); *see, e.g., Daewoo Elecs. Co. v. United States,* 13 CIT 253, 279–80, 712 F.Supp. 931, 954 (1989); *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989); *Serampore Indus. Pvt. Ltd. v. United States Dep't of Commerce,* 12 CIT 825, 834, 696 F.Supp. 665, 673 (1988); *Gilmore Steel Corp. v. United States,* 7 CIT 219, 223–24, 585 F.Supp. 670, 674 (1984); *Atlantic Sugar, Ltd. v. United States,* 1 CIT 211, 511 F.Supp. 819 (1981). In the case at bar, the subject error is of a type similar to computer programming errors which this Court granted Commerce leave to correct in *Federal–Mogul Corp. v. United States,* 16 CIT 975, 809 F.Supp. 102 (1992). Furthermore, where remand is otherwise necessary, it is appropriate to correct errors even though the result thereof may be insignificant. *Brother Indus., Ltd. v. United States,* 15 CIT 332, 346, 771 F.Supp. 374, 388 (1991).

This error was inadvertent and Commerce has apparently concluded that any cost which would be incurred by virtue of a remand for correction of this error is outweighed by the preference for accuracy in final dumping determinations. Accordingly, the Court remands this matter to Commerce for elimination of the error related to deduction of direct warranty expenses in the calculation of USP for SNR.

*INA's U.S. Repacking Costs*

■ Federal–Mogul next asserts that in calculating the exporter's sales price ("ESP") variant of USP for INA, Commerce intended to deduct the cost of INA's additional packing performed in the United States ("US-PACK"), but failed to do so. *Plaintiff's Brief* at 7.

Commerce concedes that, in calculating ESP for INA, it intended to deduct the cost of all packing performed *in* the United States from ESP. *Defendant's Brief* at 6 (emphasis added). Commerce explains that it calculated amounts for these expenses and included them under the variable USPACK but the computer program failed to deduct the amounts from ESP sales. *Id.* at 5–6. Commerce requests a remand to permit it to rectify this error. *Id.* at 6.

The court has often remanded cases to Commerce to correct similar inadvertent computer programming and ministerial errors. *See Daewoo Elecs. Co. v. United States,* 15 CIT 124, 133–34, 760 F.Supp. 200, 208 (1991), *modified,* 6 F.3d 1511 (1993); *Serampore Indus.,* 12 CIT at 834, 696 F.Supp. at 673. Therefore, the Court remands to Commerce for correction of the error relating to U.S. repacking costs in the calculation of USP for INA.

*SKF–Germany's Adjusted Price*

■ Federal–Mogul also contends that Commerce failed to make certain deductions in calculating adjusted price ("ADJPRICE") for SKF GmbH ("SKF–Germany"), an affiliate of SKF USA Inc., SKF France S.A., SKF Industrie, S.p.A., SKF (U.K.) Ltd. and SKF Sverige AB, (collectively "SKF"), before comparing it with COP when testing for sales made at prices below COP. Specifically, Federal–Mogul asserts that Commerce failed to deduct domestic pre-sale freight ("DPRSFR1H" and "DPRSFR2H") and inland freight ("DINLFRH") expenses. *Plaintiff's Brief* at 8. Federal–Mogul points out that Commerce made these deductions in calculating ADJPRICE for four SKF affiliates. *Id.*

Commerce resists Federal–Mogul's motion with regard to SKF–Germany on the ground that Federal–Mogul never raised this issue during the underlying review and is, therefore, precluded from raising this issue for the first time before the Court. *Defendant's Brief* at 8–9. However, in the event that the Court does not require Federal–Mogul to exhaust its administrative remedies in this instance, Commerce requests a remand to permit it to evaluate the merits of Federal–Mogul's allegation. *Id.* at 9.

SKF also opposes this part of Federal–Mogul's motion on the ground that SKF–Germany included freight expenses in its COP data and, therefore, Commerce was correct to exclude freight expenses from ADJPRICE in performing the below-cost test. *Opposition Brief of SKF USA Inc., SKF France, S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Ltd. and SKF Sverige AB to Federal–Mogul Corporation's Second Motion for Partial Judgment Upon the Agency Record* at 3–5.

In the context of comparison of prices with COP with respect to SKF–Germany, the Final Results explicitly state that "[m]ovement expenses are appropriately deducted from the price consistent with Department practice." *Final Results,* 57 Fed.Reg. at 28,416. As illustrated above, the Court is loathe to affirm a determination that is based on a questionable record. On occasion, the court has exercised its discretion and remanded to Commerce although an alleged ministerial error was not raised in the underlying proceeding. *Serampore Industries,* 12 CIT at 834, 696 F.Supp. at 673. Because this action is being remanded to Commerce for correction of errors relating to SNR and INA and because Commerce has indicated, in the alternative, that a remand is acceptable, this part of the action is remanded, as a matter of the Court's discretion, for Commerce to determine whether it miscalculated SKF–Germany's ADJPRICE in light of its stated policy regarding movement expenses. If Commerce agrees that there is a ministerial error in its computer programming instructions, Commerce is directed to make the appropriate correction.

*Calculation of Showa Pillow Block's Foreign Market Value*

Federal–Mogul further asserts that Commerce intended to add United States export

inspection fees to Showa Pillow Block's foreign market value, but failed to do so. Federal–Mogul contends that, as Commerce's computer program excluded inspection fees in calculating United States direct expenses, these expenses are unaccounted for. *Plaintiff's Brief* at 11–12.

Commerce protests Federal–Mogul's attempt to raise this matter before the Court, arguing that Federal–Mogul had ample opportunity to discern and contest the alleged error in the underlying administrative review but failed to do so. In support, Commerce first argues that "Commerce expressed its intent in the preliminary results to add United States export inspection fees to Showa Pillow Block's foreign market value." *Defendant's Brief* at 15. Second, Commerce argues that the alleged error in the final computer program appears also on the corresponding line of Showa Pillow Block's preliminary program. *Id.* at 14–15. Commerce requests a remand in order to consider Federal–Mogul's argument if the Court determines that Federal–Mogul did not fail to exhaust its administrative remedies. *Id.* at 15–16.

Commerce's argument concedes that it intended to add United States export inspection fees to Showa Pillow Block's FMV. As this case is being remanded for various other corrections and because Commerce is receptive to remand, this part of the action is remanded at the Court's discretion for Commerce to determine whether it miscalculated Showa Pillow Block's FMV by inadvertently omitting U.S. export inspection fees. *See Daewoo Elecs.*, 15 CIT at 133, 760 F.Supp. at 208; *Serampore Indus.*, 12 CIT at 834, 696 F.Supp. at 673. If Commerce discovers that there is an inadvertent ministerial error in its computer programming instructions, Commerce is directed to make the appropriate correction.

*IJK's Constructed Value, Seiko's Exporter's Sales Price, Nachi's Adjusted Price, and FAG U.K.'s Foreign Market Value*

Federal–Mogul contends that, in calculating constructed value for IJK, Commerce erroneously deducted interest expense. *Plaintiff's Brief* at 9.

Federal–Mogul further asserts that Commerce improperly calculated exporter's sales price ("ESP") for Seiko. *Plaintiff's Brief* at 10. Specifically, Federal–Mogul argues that Commerce's computer program for Seiko should have deducted all known cost and expense elements from unit price in calculating entered value for ESP sales. *Id.* at 10–11.

Federal–Mogul also argues that Commerce's computer program improperly calculated Nachi's adjusted home market prices for comparison with COP for purposes of testing for sales made at prices below cost of production. *Plaintiff's Brief* at 11. Specifically, Federal–Mogul contends that Commerce erroneously discarded rebates to related parties before aggregating total rebates to be deducted in the calculation of adjusted price and, in preparing to calculate ADJPRICE, erroneously set rebates to zero where they exceeded unit price. *Id.*

Lastly, Federal–Mogul argues that Commerce improperly calculated FAG U.K.'s foreign market value. *Plaintiff's Brief* at 12. Specifically, Federal–Mogul contends that, for purposes of calculating FMVs to be compared to ESP sales, Commerce inappropriately added U.S. repacking costs. *Id.* Federal–Mogul proposes that it is home market packing expenses incurred in preparing the subject merchandise for shipment to the United States which should have been added, as is required by 19 U.S.C. § 1677b(a)(1) (1988). *Id.*

Commerce argues that Federal–Mogul failed to contest the calculation of IJK's constructed value, Seiko's exporter's sales price, Nachi's adjusted price and FAG U.K.'s foreign market value during the administrative review and, therefore, Federal–Mogul should be precluded from raising these issues for the first time before the Court. *Defendant's Brief* at 9–14, 16–17. With respect to Seiko, Commerce also argues that Seiko's preliminary determination analysis memo noted that only ocean freight and marine insurance would be deducted from unit prices. *Id.* at 11.

Commerce further maintains that, after issuance of the preliminary results, Federal–Mogul was on complete notice regarding the

computer instructions applicable in the contested calculations because computer instructions identical to those employed in the Final Results existed on the corresponding lines of the preliminary computer programs for IJK, Seiko, Nachi and FAG U.K. *Id.* at 9–14, 16–17. Nevertheless, Commerce requests a remand to consider the merits of Federal–Mogul's arguments if the Court determines that Federal–Mogul did not fail to exhaust its administrative remedies with respect to these issues. *Id.*

Federal–Mogul argues that it would not be reasonable for Commerce to intentionally program computer instructions which would result in these errors and, therefore, the errors are ministerial. *Federal–Mogul Corporation's Reply to the Responses to Federal–Mogul Corporation's Second Motion for Partial Judgment Upon the Agency Record* at 7–8.

■ A failure to enforce the exhaustion of administrative remedies principle could lead to "frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency by encouraging people to ignore [administrative] procedures." *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). However, the Court finds that the facts of this case warrant disregard of the strict application of the exhaustion of administrative remedies doctrine.

As stated above, it is axiomatic that the fair and accurate determination of dumping margins is fundamental to the proper administration of our dumping laws and the correction of clerical errors is uniformly authorized where errors would affect the accuracy of determinations. *Koyo Seiko,* 14 CIT at 682, 746 F.Supp. at 1110. In the case at bar, at no time has Commerce disputed Federal–Mogul's allegations that the alleged errors are purely clerical and would not require further examination of the facts, or that their correction would significantly reduce the dumping margins of IJK, Seiko, Nachi or FAG U.K. Therefore, the Court finds that the limited burden which would be imposed on Commerce by virtue of a remand is outweighed by the preference for accurate and meaningful final determinations. It would be inappropriate for inadvertent errors which initially evade detection to be allowed to remain unremedied for procedural reasons. *Cf. Gilmore Steel,* 7 CIT at 223–24, 585 F.Supp. at 674.

As Commerce has indicated that a remand is acceptable, the Court remands this case to Commerce to permit it to determine whether it: erroneously deducted interest expense in the calculation of constructed value for IJK; improperly calculated exporter's sales price for Seiko by failing to deduct all known cost and expense elements from unit price in calculating entered value for ESP sales; improperly handled rebates in calculating Nachi's adjusted home price for comparison with COP for purposes of testing for sales made at prices below COP; and, whether it improperly calculated foreign market value for FAG U.K. by erroneously adding U.S. repacking costs instead of home market packing costs. If Commerce agrees that there are ministerial errors in its computer instructions with regard to these calculations, Commerce is directed to make the appropriate corrections.

### Conclusion

In accordance with the foregoing opinion, plaintiff's second motion for judgment on the agency record is granted and this case is remanded to Commerce to: (1) deduct direct warranty expenses in calculating United States price for SNR; (2) deduct U.S. repacking costs in calculating United States price for INA; (3) determine whether it miscalculated adjusted price for comparison with COP for SKF–Germany by inadvertently failing to deduct domestic pre-sale freight and inland freight expenses; (4) determine whether it miscalculated foreign market value for Showa Pillow Block by inadvertently omitting U.S. export inspection fees; (5) determine whether it erroneously deducted interest expense in the calculation of constructed value for IJK; (6) determine whether it improperly calculated exporter's sales price for Seiko by failing to deduct all known cost and expense elements from unit price in calculating entered value for ESP sales; (7) determine whether it improperly handled rebates in calculating Nachi's adjusted home price for comparison with COP for purposes

of testing for sales made at prices below COP; and, (8) determine whether it improperly calculated foreign market value for FAG U.K. by erroneously adding U.S. repacking costs instead of home market packing costs.

Remand results are due within sixty (60) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that responses or comments are due.

### ORDER

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to allow Commerce to: (1) deduct direct warranty expenses in calculating United States price for SNR; (2) deduct U.S. repacking costs in calculating United States price for INA; (3) determine whether it miscalculated adjusted price for comparison with COP for SKF–Germany by inadvertently failing to deduct domestic pre-sale freight and inland freight expenses; (4) determine whether it miscalculated foreign market value for Showa Pillow Block by inadvertently omitting U.S. export inspection fees; (5) determine whether it erroneously deducted interest expense in the calculation of constructed value for IJK; (6) determine whether it improperly calculated exporter's sales price for Seiko by failing to deduct all known cost and expense elements from unit price in calculating entered value for ESP sales; (7) determine whether it improperly handled rebates in calculating Nachi's adjusted home price for comparison with COP for purposes of testing for sales made at prices below COP; and, (8) determine whether it improperly calculated foreign market value for FAG U.K. by erroneously adding U.S. repacking costs instead of home market packing costs; and it is further

**ORDERED** that the remand results are due within sixty (60) days of the date that this opinion is entered. Any comments or responses by the parties to the remand re-

sults are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that responses or comments are due.