**Slip Op. 05-105**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

|  |  |
|---|---|
| HYUNDAI ELECTRONICS INDUSTRIES CO., LTD. and HYUNDAI ELECTRONICS AMERICA, INC.,<br><br>             Plaintiffs,<br><br>             v.<br><br>UNITED STATES,<br><br>             Defendant,<br><br>             and<br><br>MICRON TECHNOLOGY, INC.,<br><br>             Defendant-<br>             Intervenor. | **PUBLIC VERSION**<br><br>Cons. Court No. 00-01-00027 |

[Commerce antidumping duty remand determination sustained in part and remanded in part.]

Dated: August 25, 2005

<u>Willkie, Farr & Gallagher LLP</u> (<u>James P. Durling</u> and <u>Daniel L. Porter</u>) for Plaintiffs Hyundai Electronics Industries Co., Ltd. and Hyundai Electronics America, Inc.

<u>Peter D. Keisler</u>, Assistant Attorney General, <u>David M. Cohen</u>, Director, <u>Jeanne E. Davidson</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Kenneth S. Kessler</u>); <u>Patrick V. Gallagher, Jr.</u>, Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant United States.

<u>King & Spalding LLP</u> (<u>Gilbert B. Kaplan</u> and <u>Daniel L. Schneiderman</u>) for Defendant-Intervenor Micron Technology, Inc.

## OPINION

**GOLDBERG, Senior Judge**: This case is before the Court following
remand to the United States Department of Commerce ("Commerce").
In Hyundai Electronics Industries Co. v. United States, 28 CIT
__, 342 F. Supp. 2d 1141 (2004) ("Hyundai I"), familiarity with
which is presumed, the Court sustained in part and remanded in
part Commerce's determination in the fifth administrative review
regarding Dynamic Random Access Memory semiconductors of one
megabit or above ("DRAMs") from the Republic of Korea produced by
Hyundai Electronics Industries Co., Ltd. and Hyundai Electronics
America, Inc. (collectively "Hyundai") and LG Semicon Co., Ltd.
("LG Semicon").[1]  See Dynamic Random Access Memory Semiconductors
of One Megabit or Above From the Republic of Korea: Final Results
of Antidumping Duty Administrative Review and Determination Not
To Revoke the Order in Part, 64 Fed. Reg. 69694 (Dec. 14, 1999)
("Final Results").

In Hyundai I, the Court found that Commerce was justified in
applying only partial adverse facts available ("AFA") against LG
Semicon in determining its dumping margin.  See Hyundai I, 28 CIT
at __, 342 F. Supp. 2d at 1155.  The Court concluded that while
Commerce was correct in applying AFA against LG Semicon for its

---

[1] After the fifth administrative review was completed,
respondent Hyundai acquired respondents LG Semicon Co., Ltd. and
LG Semicon America, Inc. (collectively "LG Semicon").  In this
opinion, Hyundai-as-successor-in-interest-to-LG Semicon is
referred to as LG Semicon.

German sales to [                    ] ("the customer") because LG

Semicon knew or should have known that DRAMs sold to the customer

were destined for the United States, the use of total AFA was not

warranted because Commerce erred in using AFA for LG Semicon's

Mexican sales to [                                          ]. Id. With

respect to Plaintiffs' research and development ("R&D") costs,

the Court held that Commerce had not adduced substantial evidence

to support its theory of cross-fertilization, which allowed the

inclusion of R&D expenditures for non-subject merchandise in

calculating the cost of producing the subject merchandise. See

id. at __, 342 F. Supp. 2d at 1157. Additionally, the Court

found that Commerce had not provided specific evidence

demonstrating why Plaintiffs' amortized R&D costs did not

reasonably account for their actual R&D costs during the period

of review, or how Plaintiffs' currently deferred R&D costs

affected production and revenue for the review period. Id. at

__, 342 F. Supp. 2d at 1159.[2]

The Court remanded the matter to Commerce with instructions

to: (1) recalculate LG Semicon's dumping margin using the data

---

[2] In addition to these holdings relevant to the issues
considered here, the Court in Hyundai I also found that: (1)
Commerce did not violate LG Semicon's right to a fair and honest
proceeding; (2) Commerce's calculation of Hyundai's R&D cost
allocation ratio was reasonable; (3) Hyundai did not provide
sufficient evidence of double counting by Commerce; and (4)
Commerce's treatment of Hyundai's interest earned on severance
deposits was reasonable. See Hyundai I, 28 CIT at __, __, __,
__, 342 F. Supp. 2d at 1149-53, 1159-60, 1160, 1161-62.

provided by LG Semicon for its Mexican sales, and applying AFA only for LG Semicon's sales to the customer's German subsidiary; (2) provide additional information specifically pointing to the effect of non-subject merchandise R&D on the R&D for the subject merchandise, or in the alternative, recalculate R&D costs on the most product-specific basis possible; (3) provide specific evidence explaining how Plaintiffs' actual R&D costs for the review period are not reasonably accounted for in their amortized R&D costs, or in the alternative, accept Plaintiffs' amortization methodology; and (4) present substantial evidence demonstrating how R&D costs for Plaintiffs' long-term projects affect their current projects for the period of review, or in the alternative, accept Plaintiffs' deferral methodology. See id. at __, __, __, __, 342 F. Supp. 2d at 1155, 1157, 1159, 1159.

Commerce duly complied with the Court's order. Commerce issued draft Redetermination Results (Aug. 12, 2004) ("Draft Remand Results") and then, after receiving comments from Plaintiffs and Defendant-Intervenor Micron Technology, Inc. ("Micron"), the Final Results of Redetermination Pursuant to Court Remand (Aug. 31, 2004) ("Remand Results"). In the Remand Results, Commerce recalculated LG Semicon's dumping margin and applied a new rate of 89.10 percent, which Commerce concluded was "the highest non-aberrational margin calculated for any U.S. transaction for LG [Semicon] in the period of review[.]" Remand

<u>Results</u> at 4.  Commerce also complied with the Court's request for more information regarding its theory of cross-fertilization by providing scientific articles, new expert testimony, and the titles of some of Hyundai's development projects.  <u>Id.</u> at 4-5, 11-14.  In addition, although it expressed disagreement with the Court's findings regarding amortization in <u>Hyundai I</u>, Commerce stated that it could not provide specific evidence showing how amortization did not reasonably account for Plaintiffs' actual R&D costs incurred during the period of review.  <u>Id.</u> at 5.  Thus, Commerce recalculated Plaintiffs' R&D costs to allow for amortization.  <u>Id.</u>  Finally, Commerce continued to find that Plaintiffs' deferred R&D costs should be expensed in the period incurred because Plaintiffs did not offer any reasonable evidence demonstrating how their deferred costs would have discernible future benefits.  <u>Id.</u> at 6, 22.

Plaintiffs submitted Comments on the Final Results of Redetermination ("Pls.' Br."), and Micron submitted a Memorandum Addressing the Final Results of Redetermination Pursuant to Court Remand ("Def.-Intvr.'s Br.").  Commerce then submitted its Response to Plaintiffs' and Defendant-Intervenor's Comments.  Plaintiffs subsequently submitted Response Comments on the Final Results of Redetermination, and Micron submitted a Response Brief Addressing Plaintiffs' Comments.

The Court has jurisdiction under 28 U.S.C. § 1581(c).  The

Court must uphold Commerce's determination if it is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  After due consideration of the parties' submissions, the administrative record, and all other papers had herein, and for the reasons that follow, the Court sustains in part and reverses and remands in part.

## I. <u>DISCUSSION</u>

**A.    Commerce's Decision to Apply a Margin of 89.10 Percent as Partial AFA Is Supported by Substantial Evidence and Otherwise in Accordance with Law.**

In <u>Hyundai I</u>, the Court held that Commerce was justified in applying <u>partial</u> AFA to LG Semicon's German sales, but not in applying <u>total</u> AFA to LG Semicon's entire U.S. sales database.  <u>See</u> <u>Hyundai I</u>, 28 CIT at __, 342 F. Supp. 2d at 1153-55.  With respect to LG Semicon's German sales, the Court sustained Commerce's finding that LG Semicon knew or should have known that the DRAMs it sold to the customer's German subsidiary were destined for the U.S. market, and that its failure to submit these German sales as U.S. sales justified the use of AFA under 19 U.S.C. § 1677e(b).  <u>Id.</u> at __, 342 F. Supp. 2d at 1155.  However, with respect to LG Semicon's Mexican sales, the Court found that Commerce did not meet the requisite standard for applying AFA.  <u>Id.</u>  Thus, the Court ordered Commerce to recalculate LG Semicon's dumping margin using AFA only for LG Semicon's sales to the customer's German subsidiary.  <u>Id.</u>

Commerce complied with the Court's instructions and calculated a new AFA rate of 89.10 percent.  See Remand Results at 2-4.  In choosing this rate, Commerce stated that it selected the highest non-aberrational margin calculated for any of LG Semicon's U.S. transactions during the period of review.[3]  See id. at 4.  Commerce also noted that the 89.10 percent rate fell within "a range of margins for a large portion of LG [Semicon]'s review period transactions that decrease[d] steadily by small amounts."  Id.  Finally, Commerce observed that the new rate was sufficiently adverse to ensure that LG Semicon would not have obtained a more favorable result by failing to cooperate than if it had cooperated fully, and also furthered the statutory purpose underlying the AFA rule to induce respondents to provide Commerce with complete and accurate information in a timely manner.  See id.

### 1.    The 89.10 Percent Rate Is Non-Aberrational.

Plaintiffs argue that Commerce failed to explain why the 89.10 percent rate is non-aberrational, while the other margins above it are aberrational.  Pls.' Br. at 3.  According to Plaintiffs, Commerce's discretion in applying AFA is not unlimited; rather, Commerce must demonstrate why a particular AFA rate is indicative of a respondent's selling practices and

---

[3] Calculated rates ranging as high as 223 percent were actually available for LG Semicon on remand.  See Remand Results at 4.

rationally related to its sales. Id. Here, Plaintiffs contend, Commerce failed to demonstrate in the Remand Results that the 89.10 percent rate is indicative of LG Semicon's sales, and therefore non-aberrational. Id.

The Court disagrees for two reasons. First, the Court finds that the 89.10 percent rate is inherently indicative of LG Semicon's selling practices because it was derived from LG Semicon's "own sales data from the instant review segment." Remand Results at 8. When Commerce utilizes a respondent's own sales data, it is afforded broad discretion in the selection of the adverse rate, and this is true even if the selected rate is reflective of only a small proportion of the respondent's sales. See Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir. 2002). Thus, although the 89.10 percent rate chosen by Commerce may be higher than other calculated margins, this fact alone does not render the AFA rate aberrational or unrelated to LG Semicon's sales practices.

Second, the Court finds that Commerce did adequately explain in the Remand Results why the 89.10 percent rate is non-aberrational: "[T]he margin selected falls in a range of margins for a large portion of LG [Semicon]'s review period transactions that decrease steadily by small amounts." Remand Results at 8. The record evidence clearly shows that the selected 89.10 percent margin is within a grouping of sales whose margins differ by very

small amounts (e.g., 89.10 percent, [    ] percent, [    ] percent, and [    ] percent), while several sales margins ([    ]) above 89.10 percent range from [    ] percent to 223 percent and do not form a cluster. See Confidential Administrative Record ("Conf. Admin. R.") at Ex. 8 (SAS Margin Program Log and Output dated Aug. 28, 2004) at 54. In contrast to this record evidence supporting Commerce's determination, Plaintiffs did not provide any evidence showing how the 89.10 percent rate is aberrational, or otherwise unreflective of LG Semicon's selling practices. As a result, the Court finds that the 89.10 percent rate selected by Commerce on remand is non-aberrational.

### 2.   The 89.10 Percent Rate Is Not Unduly Punitive.

Plaintiffs also argue that the 89.10 percent rate is unduly punitive and excessive. Pls.' Br. at 3. Plaintiffs assert that this new rate is sixteen times greater than Hyundai's previous dumping margin and almost eighteen times greater than LG Semicon's previous margin. See id. at 4. Additionally, Plaintiffs note that while LG Semicon's weighted-average dumping margin was 10.44 percent under total AFA, this margin rose to 15.87 percent upon Commerce's application of only partial AFA to LG Semicon's German sales. See id. at 3-4. Concluding that LG Semicon has been made worse off with partial AFA than with total AFA, Plaintiffs argue that Commerce has failed to create an incentive for foreign companies to cooperate in administrative

reviews, and that Congress's intention to strike "a balance between deterrence for non-compliance and assuring a reasonable margin" has not been achieved. Id. at 4 (quoting F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).

The Court, however, finds that the 89.10 percent rate selected by Commerce upon remand is neither unduly punitive nor excessive. First, Commerce acts within its discretion and does not "overreach reality" so long as the "selected . . . dumping margin [is] within the range of [the respondent's] actual sales data[.]" See Ta Chen, 298 F.3d at 1340. Here, because Commerce selected an AFA rate from a range of margins calculated using LG Semicon's own sales data, Commerce did not abuse its discretion. Moreover, the new rate of 89.10 percent is in fact lower than several ([     ]) other margins Commerce calculated for LG Semicon, and therefore is not excessive.

Second, the 89.10 percent rate is not rendered unduly punitive simply because it is higher than the previous rate calculated using total AFA. As the Court has already noted, new margins ranging as high as 223 percent became available for LG Semicon's sales practices after the Court ordered the recalculation in Hyundai I. See Remand Results at 4. Since 19 U.S.C. § 1677e(b) does not prohibit Commerce from including such new sales in its remand calculations, Commerce was free to select

an AFA rate incorporating these new margins, even though that meant assigning a higher rate to LG Semicon under partial AFA than under total AFA.

Finally, the Court rejects Plaintiffs' assertion that Commerce failed to create an incentive to cooperate in administrative reviews, and also failed to strike a balance between deterrence and assuring a reasonable margin.  If LG Semicon had correctly reported certain sales it knew or should have known were destined for the United States, Commerce would not have applied AFA at all, and the mere fact that LG Semicon received a higher rate on remand does not diminish its incentive to cooperate more fully in future reviews in an effort to avoid the application of AFA.  In addition, the issue of whether Commerce properly balanced deterrence with providing a reasonable margin is inapposite, because the Court has already determined that Commerce did provide LG Semicon with a reasonable margin. The 89.10 percent rate is a non-aberrational rate that was derived from LG Semicon's own sales data.  Consequently, the margin was within Commerce's discretion to select and must be considered reasonable.  See Ta Chen, 298 F.3d at 1339.

Accordingly, Commerce's decision on remand to apply an AFA rate of 89.10 percent is supported by substantial evidence and otherwise in accordance with law.

**B.    Commerce's Treatment of Plaintiffs' R&D Costs Is Sustained in Part and Reversed and Remanded in Part.**

In Hyundai I, the Court found that Commerce did not offer substantial evidence in support of its cross-fertilization theory.  Hyundai I, 28 CIT at __, 342 F. Supp. 2d at 1157.  The Court also held that Commerce's decision to reject Plaintiffs' amortization of R&D costs was not supported by substantial evidence.  See id. at __, 342 F. Supp. 2d at 1157-59.  In addition, the Court found that Commerce failed to provide specific record evidence showing how deferred R&D costs actually affect production and revenue for the period of review.  Id. at __, 342 F. Supp. 2d at 1159.

On remand, Commerce (1) provided additional factual information in support of its cross-fertilization theory; (2) recalculated Plaintiffs' R&D costs to allow for amortization; and (3) continued to find that Plaintiffs' R&D costs should be expensed in the period incurred, instead of being deferred.  See Remand Results at 4-6.  Plaintiffs challenge Commerce's findings with respect to cross-fertilization and deferral of R&D expenses, while Micron challenges Commerce's finding with respect to amortization of R&D expenses.

**1.    Commerce's Decision Not to Calculate Costs on a Product-Specific Basis Is Not Supported by Substantial Evidence.**

In Hyundai I, the Court rejected Commerce's suggestion that "intrinsic benefits . . . occur between R&D expenditures on non-

subject merchandise and production of subject merchandise," and that "R&D costs for non-subject merchandise [therefore] should be included in the cost of production analyses." Hyundai I, 28 CIT at __, 342 F. Supp. 2d at 1156. Specifically, the Court found that Commerce failed to offer substantial evidence in support of its cross-fertilization theory because the findings of its expert, Dr. Murzy Jhabvala, were based on a prior antidumping investigation that concerned "different products and different parties" than those at issue in Hyundai I. Id. at __, 342 F. Supp. 2d at 1156-57. Thus, the Court remanded for Commerce "to provide additional information specifically pointing to the effect of non-subject merchandise R&D on the R&D for the subject merchandise, or alternatively, [to] recalculat[e] R&D costs on the most product-specific basis possible for both LG Semicon and Hyundai." Id. at __, 342 F. Supp. 2d at 1157.

On remand, Commerce complied with the Court's request for additional information by providing three exhibits that were originally submitted for the record of the fifth administrative review by Micron. See Def.-Intvr.'s Br. at Ex. 2 (Micron's Submission of Factual Information dated Dec. 18, 1998) at Doc. 1(a) (Memorandum from Dr. Murzy Jhabvala dated Sept. 8, 1997) ("Jhabvala Letter 1"); id. at Doc. 1(b) (World Technology Evaluation Center Report on the Korean Electronics Industry dated Oct. 1, 1997) ("WTEC Report"); id. at Doc. 2 (Memorandum to the

File from Dr. Murzy Jhabvala dated Dec. 18, 1997) ("Jhabvala Letter 2"); id. at Doc. 3 (Letter from Eugene Cloud dated Oct. 15, 1997) ("Cloud Letter"); id. at Doc. 3(a) (Attachment A Articles dated Sept.-Oct. 1997) ("Attachment A Articles"); id. at Doc. 3(b) (Attachment B Articles dated Oct. 1997) ("Attachment B Articles"). Commerce also presented the names of certain research projects that were conducted by Hyundai in non-memory IC labs but featured the word "DRAM" in their titles. See Remand Results at 14.

Plaintiffs maintain that the additional factual information supplied by Commerce suffers from the same deficiencies as the information on which Commerce initially relied – namely, the new evidence does not relate to non-subject merchandise, and it does not specifically address Plaintiffs' operations. Pls.' Br. at 5. Moreover, Plaintiffs contend, simply because the word "DRAM" is in a project does not provide substantial evidence that the R&D actually relates to DRAM development. Id. at 7.

The Court agrees that the additional information provided by Commerce on remand does not constitute substantial evidence of cross-fertilization between DRAMs and non-DRAM merchandise with respect to R&D costs in this case. First, as in Hyundai I, the new evidence on which Commerce relies does not demonstrate "direct contact or experience with Plaintiffs' practices during this review[,]" but rather concerns "different products and

different parties to that of the current review[.]" Hyundai I,

28 CIT at __, 342 F. Supp. 2d at 1157.  In fact, Jhabvala Letter

1 is the same document rejected by the Court in Hyundai I, while

Jhabvala Letter 2 is based on similar research from a prior

antidumping investigation that involved different parties and

products.  See Jhabvala Letter 1 at 1-2; Jhabvala Letter 2 at 1-

2.  Moreover, the WTEC Report referenced by Commerce only refers

to Plaintiffs' DRAM market shares, and only mentions DRAM R&D in

the context of industry-wide research goals – it does not address

Plaintiffs' specific R&D operations or production practices.  See

WTEC Report at 4-9.  Finally, the Cloud Letter, Attachment A

Articles, and Attachment B Articles all fail to mention

Plaintiffs by name, and none demonstrates direct contact with

Plaintiffs' R&D practices during the review.[4]  See Cloud Letter

at 1-3; Attachment A Articles at 1-3; Attachment B Articles at 1-

14.

Second, Commerce's additional information fails to

"specifically point[ ] to the effect of non-subject merchandise

R&D on the R&D for the subject merchandise[.]"  Hyundai I, 28 CIT

---

[4] The Attachment A Articles fail to mention either
Plaintiffs or the subject merchandise, while the Attachment B
Articles only discuss how DRAM technology has been applied to
Application Specific Integrated Circuits ("ASICs") by other
firms.  See Attachment A Articles at 1-3; Attachment B Articles
at 3, 6-7, 9-10.  Likewise, the Cloud Letter does not name
Plaintiffs once; instead, it was written in response to "letters
submitted by Dr. Bruce Wooley on behalf of ISSI and Dr. David
Angel on behalf of Samsung."  Cloud Letter at 1.

at __, 342 F. Supp. 2d at 1157. Both Jhabvala Letter 1 and Jhabvala Letter 2 argue that cross-fertilization occurs within the semiconductor industry, but the evidence and research contained therein deal exclusively with SRAMs rather than the subject merchandise DRAMs. See Jhabvala Letter 1 at 1-2; Jhabvala Letter 2 at 1-2. Similarly, the WTEC Report discusses only an industry-wide goal of utilizing DRAM R&D to improve SRAM production; it does not establish that SRAM R&D actually benefits DRAM R&D.[5] See WTEC Report at 8-9. Moreover, Mr. Cloud's focus and expertise, like that of Dr. Jhabvala, is on SRAMs rather than DRAMs, and the various technological developments discussed in the Attachment A and B Articles fail to identify any specific effect on R&D for the subject merchandise.[6] See Cloud Letter at 1-3; Attachment A Articles at 1-3; Attachment B Articles at 1-14.

Finally, Commerce's apparent reliance on the names of Hyundai's R&D projects is misplaced. According to Commerce, the names of three research projects "[c]learly [show] Hyundai was

---

[5] Furthermore, the WTEC Report does not indicate that Plaintiffs have achieved, or even share, the industry-wide goal of using DRAM technology to increase SRAM capacity. See WTEC Report at 8-9.

[6] The Attachment A Articles deal with copper metallization technology and do not mention DRAMs. See Attachment A Articles at 1-3. The Attachment B Articles merely note that DRAM technology has been introduced into the design of ASICs. See Attachment B Articles at 1-14. There is no specific explanation of how these various advancements directly impact DRAM R&D. See id.

conducting [memory] research during the POR in its [non-memory] IC Lab[, which] clearly indicate[s] that in the semiconductor industry, there is enough similarity among semiconductor products and process technology objectives, that advances from R&D for one type of semiconductor product can benefit other semiconductor products." Remand Results at 14. However, as the Court has previously explained, the simple recitation of R&D project titles does not constitute substantial evidence of cross-fertilization. Hynix Semiconductor, Inc. v. United States, 28 CIT __, __, 295 F. Supp. 2d 1365, 1372 (2003). Thus, the Court holds that Commerce's presentation of the names of Hyundai's R&D projects does not establish that non-subject merchandise R&D benefits subject merchandise R&D.

Accordingly, the Court finds that Commerce failed to provide substantial evidence to support its theory of cross-fertilization. The Court therefore remands this issue to Commerce with instructions to recalculate Plaintiffs' R&D costs on the most product-specific basis possible.

> 2. **Commerce's Decision to Accept Plaintiffs' Amortization of R&D Expenses Is Supported by Substantial Evidence and Otherwise in Accordance with Law.**

In disapproving Commerce's initial refusal to accept Plaintiffs' amortization of R&D costs, the Court in Hyundai I rejected Commerce's finding that "Plaintiffs' practice of 'continually changing' [accounting] methodologies produces

'aberrationally high amounts of R&D expense in some years, and aberrationally low amounts of R&D expense in other years, that do not reasonably reflect [production] costs.'" Hyundai I, 28 CIT at __, 342 F. Supp. 2d at 1158 (quoting Final Results, 64 Fed. Reg. at 69699). The Court stated that "Plaintiffs' previous changes in accounting methodology are not relevant in this case as the Court is concerned with the actions of the parties with respect to their R&D costs only for this period of review." Id. The Court also dismissed Commerce's concern that the inadvertent result of the change in accounting practice would allow Plaintiffs to recognize less than one-fifth of the current year's R&D costs. Id. (citing Final Results, 64 Fed. Reg. at 69699). According to the Court, "in switching from expensing to amortization, a difference in costs will likely occur, as amortization by definition permits the allocation of costs over the market life of the product, while expensing costs during the period incurred necessarily implies a one-time charge." Id. Therefore, the Court remanded to Commerce "to provide specific evidence regarding how Plaintiffs' actual R&D costs for this period of review are not reasonably accounted for in its amortized R&D costs." Id. at __, 342 F. Supp. 2d at 1159.

On remand, Commerce stated:

> We believe that in the Final Results, we fully explained, and supported with substantial evidence, our positions regarding the amortization of LG [Semicon]'s and Hyundai's R&D costs. Nevertheless, the Court has

found that the information cited by the Department does
not constitute substantial evidence supporting this
determination.  Therefore, although we disagree with
the Court's findings, we have recalculated LG
[Semicon]'s and Hyundai's R&D costs to allow for
amortization.

Remand Results at 5.

Micron urges that, although Commerce conceded it was unable
to comply with the Court's request that it provide additional
evidence in support of its determination regarding amortization,
Commerce actually did point to such evidence in the Remand
Results.[7]  See Def.-Intvr.'s Br. at 1.  The Court, however, has
carefully reviewed Commerce's discussion of the amortization
issue in the Remand Results, see Remand Results at 5, 17-19, and
finds that it is noticeably void of any "specific evidence
regarding how Plaintiffs' actual R&D costs for this period of
review are not reasonably accounted for in its amortized R&D
costs[,]" which is what the Court instructed Commerce to provide

---

[7] In addition to this argument, the Court notes that
Micron's Memorandum Addressing the Final Results of
Redetermination Pursuant to Court Remand, which was filed on
September 30, 2004, is largely comprised of arguments regarding
the alleged incompatibility between the Court's decision in the
instant proceeding and the Court's decision in Micron Technology,
Inc. v. United States, 23 CIT 380 (1999), as well as a section
explaining why portions of the Court's reasoning in Hyundai I
are, in Micron's view, "irrelevant."  See Def.-Intvr.'s Br. at
10-15, 16.  As such, Micron's brief is more akin to a motion for
rehearing and reconsideration of the Court's April 16, 2004
decision in Hyundai I – something the Court declines to entertain
at this late stage.  See USCIT R. 59(b) ("A motion for a . . .
rehearing shall be served and filed not later than 30 days after
the entry of the judgment or order.").

on remand.  Hyundai I, 28 CIT at __, 342 F. Supp. 2d at 1159
(emphasis added).  Moreover, the concerns expressed by Commerce
in the Remand Results were already considered and rejected by the
Court in Hyundai I.

     Accordingly, the Court sustains Commerce's decision to
accept Plaintiffs' amortization of R&D expenses for purposes of
calculating the cost of production.

     3.   **Commerce's Rejection of Plaintiffs' Deferral of R&D**
          **Expenses Is Not Supported by Substantial Evidence.**

     In Hyundai I, the Court held that Commerce failed to provide
specific evidence demonstrating why Plaintiffs' deferred R&D
costs should be allocated into the cost of production
calculation.  Hyundai I, 28 CIT at __, 342 F. Supp. 2d at 1159.
In particular, the Court was unconvinced by Commerce's argument
that "the practice of indefinite deferral of R&D costs is
inconsistent with the conservatism principle in accounting[,]"
since "Plaintiffs point[ed] out that their [deferral]
methodology, which is in accordance with Korean GAAP, does follow
the principle of conservatism in accounting."[8]  Id.  Thus, after
observing that "[o]nly R&D costs that are related to the
production and revenue of the subject merchandise for the review

_____

     [8] Conservatism in accounting calls for the recognition of
expenses when incurred if the probability of associated revenue
is remote or uncertain.  Hyundai I, 28 CIT at __, 342 F. Supp. 2d
at 1159.

period should be included in Commerce's calculations[,]" see 19

U.S.C. § 1677b(f)(1)(A), the Court remanded to Commerce to

provide "specific evidence on the record to show that R&D costs

that are currently deferred actually affect production and

revenue for this review period." Hyundai I, 28 CIT at __, 342 F.

Supp. 2d at 1159.

On remand, Commerce continues to rely upon general

accounting principles in support of its determination that R&D

expenditures for long-term projects should be included in the

current cost of production calculation.[9] See Remand Results at

5, 22-23. In addition, Commerce faults Plaintiffs for failing to

offer any "reasonable evidence to indicate that their deferred

[R&D] costs will benefit future periods." Id. at 6.

In response, Plaintiffs claim they did provide substantial

evidence demonstrating that "the future benefits of [DRAM]

research are both readily discernible and imminent at the time of

the expenditures." Pls.' Br. at 12 (citing Supplement to

Hyundai's Appendix of the Administrative Record at CR 42 (Hyundai

Cost Verification Exhibit 10 and Report dated June 11, 1999) at

Ex. 10(a), 10(c)). Plaintiffs also note that Commerce failed on

remand to show even one example of how R&D for long-term projects

---

[9] Specifically, Commerce cites to both International Accounting Standard 9 and U.S. GAAP to assert that "R&D should not be deferred because the future economic benefits cannot be quantified and measured with a reasonable degree of certainty." Remand Results at 22.

impacted projects for the current review period.  Id. at 9.
Finally, Plaintiffs contend that Commerce erroneously shifted its
burden of providing additional information on remand to
Plaintiffs.  Id.

The Court agrees that Commerce failed to provide specific
evidence in the Remand Results showing how Plaintiffs' "R&D costs
that are currently deferred actually affect production and
revenue for this review period."  Hyundai I, 28 CIT at __, 342 F.
Supp. 2d at 1159 (emphasis added).  By continuing to cite to
general accounting principles on remand, Commerce is merely
attempting to resurrect its previous argument, which the Court
already rejected in Hyundai I, that the future benefits of
deferred R&D costs are unquantifiable.[10]  The general accounting
principles on which Commerce relies do not directly address any
of Plaintiffs' expenditures for long-term R&D projects, and they
do not explain how such R&D costs might affect revenue and
production for the current review period, which is what the Court
ordered Commerce to consider on remand.  Moreover, since it was
the burden of Commerce – not Plaintiffs – to provide additional

---

[10] In Hyundai I, Commerce claimed that Plaintiffs' practice
of indefinite deferral of R&D costs was inconsistent with the
conservatism principle in accounting because the probability of
associated revenue was remote or uncertain.  Hyundai I, 28 CIT at
__, 342 F. Supp. 2d at 1159.  In the Remand Results, Commerce
again "conclude[s] that R&D should not be deferred because the
future economic benefits cannot be quantified and measured with a
reasonable degree of certainty."  Remand Results at 22.

information on remand, Commerce's assertion that Plaintiffs failed to offer "reasonable evidence" in defense of R&D deferral improperly shifts the burden of providing additional information to Plaintiffs. See Remand Results at 6.

Accordingly, because Commerce entirely failed to comply with the Court's instructions in Hyundai I to provide specific evidence showing how deferred R&D costs actually affect production and revenue for the current review period, the Court remands to Commerce with instructions to accept Plaintiffs' deferral methodology in calculating R&D expenses for the cost of production.

**C.    Commerce Properly Decided to Correct an Error in the Calculation of Hyundai's Entered Value.**

After Commerce issued the Draft Remand Results, Micron raised a challenge to Commerce's calculation of Hyundai's total entered value. See Conf. Admin. R. at Ex. 2 (Micron's Comments on the Draft Final Results of Redetermination dated Aug. 18, 2004) at 11-13. According to Micron, the margin program used by Commerce to calculate Hyundai's entered value improperly multiplied quantity and value variables that were stated in inconsistent units of measure, which led to an erroneously low importer-specific assessment rate. See id. at 12. In response, Plaintiffs agreed with Micron that Commerce should address the miscalculation issue, but Plaintiffs further argued that Hyundai's entered value should also include all of the sales made

by Hyundai Electronics America, Inc. ("HEA") – not just the sales that HEA resold to U.S. customers.  See Conf. Admin. R. at Ex. 3 (Hynix's Rebuttal to Micron's Comments on the Draft Final Results of Redetermination dated Aug. 23, 2004) at 7-8 ("Pls.' Draft Reply Br.").  In the Remand Results, Commerce made the programming changes suggested by Micron, but did not address the issue raised by Plaintiffs.  Remand Results at 32.

Plaintiffs now contend that Commerce and Micron were time barred from revisiting the calculation methodology for Hyundai's entered value.  Pls.' Br. at 15.  In addition, Plaintiffs argue that Commerce's change to the entered value calculation did not involve correcting "a mere clerical error."  Id. at 16.  Finally, Plaintiffs assert that if Commerce is permitted to change its calculation of the entered value at all, then it should include all of HEA's sales transactions in the calculation.  Id. at 17-19.

   1.   **Commerce Properly Corrected the Ministerial Error in the Calculation of Hyundai's Entered Value Identified by Micron.**

With respect to Plaintiffs' first issue, the Court finds that although Plaintiffs allege Commerce and Micron were time barred from recalculating Hyundai's entered value, in reality it is Plaintiffs who are barred from objecting to the recalculated entered value, because Plaintiffs have reversed their agency position on appeal.  After Commerce released the Draft Remand

Results, Plaintiffs did not object to Micron's argument regarding the improper multiplication of the entered value, and in fact "agree[d] that the Department should address this issue." Pls.' Draft Reply Br. at 7 (emphasis added). On appeal, Plaintiffs now contend that Commerce and Micron were time barred from addressing the miscalculation at all. See Pls.' Br. at 15.

The Court has repeatedly held that "a party may not reverse the position it took before the agency and raise contrary arguments on appeal" because this "den[ies Commerce] the opportunity to review plaintiffs' arguments" and "deprive[s] the other parties of their right to respond to plaintiffs' position." Calabrian Corp. v. United States Int'l Trade Comm'n, 16 CIT 342, 347, 794 F. Supp. 377, 383 (1992). Plaintiffs have clearly reversed their agency position on appeal; therefore, the Court will not entertain Plaintiffs' new objection to the calculation of Hyundai's entered value.

Moreover, even if Plaintiffs were not barred from reversing their agency position on appeal, their objection to Hyundai's recalculated entered value would nonetheless fail on the merits. First, Commerce "may, with or without a party's request, correct errors that it reasonably regards as ministerial in final determinations." Shandong Huarong Gen. Corp. v. United States, 25 CIT 834, 848, 159 F. Supp. 2d 714, 727 (2001) (quoting Aramide Maatschappij V.o.F. v. United States, 19 CIT 1094, 1103, 901 F.

Supp. 353, 361 (1995)), aff'd sub nom. Shandong Huarong Gen.
Group Corp. v. United States, Appeal No. 02-1095 (Fed. Cir. Jan.
10, 2003).  Here, because the calculation of Hyundai's entered
value involved multiplying quantity and value variables that were
stated in inconsistent units of measure, the calculation was
clearly an "error in addition, subtraction, or other arithmetic
function," and Commerce therefore correctly regarded the
miscalculation as a ministerial error.  See 19 C.F.R. §
351.224(f) (defining "ministerial error").

Second, the Court itself has a responsibility to "exercise
its discretion to prevent knowingly affirming a determination
with errors."  Torrington Co. v. United States, 21 CIT 1079, 1082
(1997); see also Fed.-Mogul Corp. v. United States, 18 CIT 1168,
1172, 872 F. Supp. 1011, 1014 (1994).  At various stages of this
review, all parties have agreed that the Draft Remand Results
contained a miscalculation of Hyundai's entered value.  See
Remand Results at 31-32; Pls.' Draft Reply Br. at 7.  Therefore,
the Court would be "knowingly affirming a determination with
errors" if it did not sustain the correction made by Commerce in
the Remand Results.  Torrington, 21 CIT at 1082.

Accordingly, Commerce's recalculation of Hyundai's entered
value in the Remand Results is sustained.

**2.      Commerce Properly Refused to Address Plaintiffs'
          Challenge to the Calculation Methodology for Hyundai's
          Entered Value.**

The Court also affirms Commerce's decision not to address Plaintiffs' argument concerning the inclusion of all HEA's sales in Hyundai's entered value. "While Commerce is required to allow respondents to correct clerical errors discovered late in the administrative process, clerical errors are distinguished from substantive errors and do not encompass methodological modifications." Tianjin Mach. Imp. & Exp. Corp. v. United States, 28 CIT ___, ___, 353 F. Supp. 2d 1294, 1304 (2004). Clerical, or ministerial, errors are defined as "error[s] in addition, subtraction, or other arithmetic function, clerical error[s] resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial." 19 C.F.R. § 351.224(f); see also Maui Pineapple Co. v. United States, 27 CIT ___, ___, 264 F. Supp. 2d 1244, 1261 (2003) (quoting Certain Fresh Cut Flowers From Colombia; Final Results of Antidumping Duty Administrative Reviews, 61 Fed. Reg. 42833 (Aug. 19, 1996)).

Although Plaintiffs claim that Commerce made an incorrect entered value calculation, Commerce's decision to use only HEA's U.S. sales in calculating Hyundai's entered value was not an "error in addition, subtraction, or other arithmetic function," did not involve "inaccurate copying [or] duplication," and was

not an "unintentional error."  19 C.F.R. § 351.224(f).  Rather, the decision to exclude HEA's non-U.S. sales involved many issues of methodology and fact,[11] and Commerce intentionally rejected Plaintiffs' alternative methodology because "the record does not appear to contain the data necessary to support Hyundai's claim." Remand Results at 33.  Thus, unlike the miscalculation identified by Micron, Plaintiffs' challenge does not involve a clerical error, and Commerce therefore properly refused to address this issue in the Remand Results.

## II. <u>CONCLUSION</u>

For the aforementioned reasons, the Remand Results are sustained in part and reversed and remanded in part.  A separate order will be issued accordingly.

/s/ Richard W. Goldberg
**Richard W. Goldberg**
**Senior Judge**

**Dated:** **August 25, 2005**
**New York, New York**

---

[11] These issues included (1) the extent of HEA's transshipped sales to third countries; (2) whether Customs could distinguish between entries destined for the United States and those destined for third countries; and (3) whether transshipped entries should have been included in the assessment rate calculation.  See Pls.' Br. at 17-19; Def.-Intvr.'s Br. at 17-19.